IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MELODIE SHULER          :
                        :
                        :
    v.                  :    Civil No. CCB-12-1684
                        :
                        :
TOWER LEGAL STAFFING, INC.   :

**MEMORANDUM**

Now pending before the court is a motion to dismiss or, in the alternative, for summary judgment, filed by Tower Legal Staffing, Inc. ("Tower") against plaintiff Melodie Shuler ("Ms. Shuler"). Ms. Shuler brings several claims against Tower arising out of her termination: failure to pay wages, defamation, breach of contract, and negligence. The issues in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the defendants' motion to dismiss, construed as a motion for summary judgment on two of Ms. Shuler's claims, will be granted.

**BACKGROUND**

Melodie Shuler is a practicing attorney who has been licensed in Maryland since 2002. On February 7, 2012, Tower Legal Staffing, a company that provides legal document review services, extended an email invitation to Ms. Shuler to work as a temporary employee performing document review at Tower's office in Charlotte, North Carolina. Tower's email contained details about the project and required Ms. Shuler to notify Tower of her availability to begin work. The email also contained the following information about wages: "The rate of pay is $25.00 per hour Licensed, Active Attorneys for this project. Citi will not pay time and a half on this project. However, Citi will pay straight time for all hours worked." (ECF No. 17, Ex. 11.)

1

Tower attached its employee handbook and guidelines to the offer email and required Ms. Shuler to review the attachments before beginning work on the project.

Ms. Shuler communicated her acceptance of Tower's offer of employment by email on February 7, 2012. The next day, Ms. Shuler signed a written offer of employment with Tower and began work in North Carolina. (Compl., ECF No. 2, 1; ECF No. 17, Ex. 4.) The offer included the following terms:

> You will be employed by Tower in the position of **Contract Attorney** on a temporary basis for the purpose of performing services for Tower's client, **Johnson & Johnson** ("Client"), at its location in **Charlotte, NC.**
>
> \* \* \*
>
> Although we anticipate that your employment will continue until completion or earlier termination of the Project, employment at Tower is "at will." This means that either you or the Company may end your employment at any time, with or without cause, and with or without notice.

(ECF No. 17, Ex. 4.)

Tower terminated Ms. Shuler's employment on March 20, 2012, for failing to perform redactions. Ms. Shuler filed a *pro se* complaint against Tower in Baltimore City Circuit Court on April 5, 2012, claiming that Tower failed to pay her wages of "about $250.00" for her last day of work, failed to pay her overtime of "about $700.00" (Count I), and defamed her in its communications with Johnson & Johnson (Count II). Ms. Shuler also alleged that Tower breached its contract with her by failing to provide her with training or the opportunity to correct her work (Count III), and that Tower acted negligently by providing defective computer systems and maintaining an unhealthy work environment (Count IV). Tower removed the action to this court on June 7, 2012.[1]

---

[1] Although the scheduling order entered in this case set a filing deadline of November 1, 2012, for all motions for summary judgment, Ms. Shuler filed a motion for partial summary judgment on November 26, 2012. On December 10, 2012, Tower filed a motion to strike Ms. Shuler's partial summary judgment motion. Because Ms. Shuler filed her motion for partial summary judgment more than three weeks late and did not request an extension, the court will

**ANALYSIS**

**Standard of Review**

This case comes before the court on a motion to dismiss pursuant to Rule 12(b)(6), or, in the alternative, for summary judgment. "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set

---

deny the motion and grant Tower's motion to strike. In any event, the Ms. Shuler's motion would fail essentially for the same reasons Tower is entitled to dismissal or summary judgment. The court also will deny Ms. Shuler's motion for leave to file an amended complaint as futile, pursuant to Fed. R. Civ. P. 15. *See Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("[a] district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.")

forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Where matters outside the pleadings are considered by the court, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the

court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

**Discussion**

*Choice of law*

A court sitting in a diversity case must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941). "Maryland generally follows the 'lex loci contractus' principle, under which 'the law of the jurisdiction where the contract was made controls its validity and construction.'" *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 607 (4th Cir. 2013) (quoting *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 535 A.2d 466, 467 (1988)). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Trust, Inc. v. WHE Associates, Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002). In the present case, Ms. Shuler admits she was in North Carolina when she communicated her acceptance of Tower's offer of employment, by email, on February 7, 2012 (ECF No. 17, Ex. 11.). Thus, North Carolina law governs Ms. Shuler's contract claims.

North Carolina law also applies to Ms. Shuler's tort claims. Despite a modern trend favoring alternative approaches, "Maryland adheres to the *lex loci delicti* rule" to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 752 A.2d 200, 230 (2000); *see also Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 651 (2007) ("We see no reason to discontinue our adherence to the principles of *lex loci delicti*."). Under this rule, "the substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207, 1209 (1983). The complaint's allegations make clear that the site of the alleged torts was Tower's office in North Carolina.

*Wage and Overtime Claim*

Ms. Shuler alleges that Tower failed to pay her "about $250.00" in wages for her final day of work and overtime "in the amount of about $700.00." (ECF No. 2, 1.) At deposition, however, Ms. Shuler stated that, since filing her complaint, she had received a $200 payment for eight hours of work on her last day. (ECF No. 17, Ex. 1, 32-33.) Ms. Shuler claims she should have been paid for 8.25 hours, which, at Ms. Shuler's hourly rate of twenty-five dollars, amounts to $6.25. (*Id.* at 33.) Such a minimal amount of damages will not be considered by the court.

As for Ms. Shuler's overtime claim, Ms. Shuler does not claim to be entitled to overtime pay under state or federal law. (*See id.* at 82.) Rather, Ms. Shuler alleges that she had a right to overtime pay under her contract with Tower. (*Id.* at 82-84.) Ms. Shuler can offer no support for this position, however, in light of the undisputed fact that Tower's offer of employment explicitly provides that the client "will not pay time and a half on this project." (ECF No. 17, Ex. 11, 3.) Accordingly, Ms. Shuler's claim for contractual overtime also fails.

*Defamation*

Ms. Shuler also claims that Tower lied to Tower's client, Johnson & Johnson, by stating that Ms. Shuler "did work she did not do," and used this misrepresentation to have her terminated. (ECF No. 2, 1-2.) To prevail on a claim of defamation under North Carolina law, Ms. Shuler must establish: "(1) a publication that is both (2) defamatory and (3) false." *Suarez v. Charlotte-Mecklenburg Sch.*, 123 F. Supp. 2d 883, 892 (W.D.N.C. 2000) (citing *Long v. Vertical Technologies, Inc.*, 113 N.C. App. 598, 601, 439 S.E.2d 797, 800 (1994)). Here, the evidence is undisputed that there was no publication of any defamatory statement. Tower employee Stephon Fonseca provided sworn testimony that "Tower Legal did not ever communicate to Johnson & Johnson that Ms. Shuler had any performance problems or that she was terminated. Johnson &

Johnson was not even aware of Ms. Shuler's identity."[2] (Fonseca Aff., ECF No. 17, Ex. 2, ¶ 9.) Since Ms. Shuler can offer no evidence of publication, her defamation claim cannot succeed.

*Breach of Contract*

Ms. Shuler alleges breach of contract based on Tower's failure to provide her with particular training or the opportunity to correct her work. Tower responds that Ms. Shuler cannot establish a breach of contract claim because her employment was at-will.

In North Carolina, "absent some form of contractual agreement between an employer and employee establishing a *definite* period of employment, the employment is presumed to be an 'at-will' employment, terminable at the will of either party, irrespective of the quality of performance by the other party." *Pittman v. Wilson Cnty.*, 839 F.2d 225, 227 (4th Cir. 1988) (quoting *Harris v. Duke Power Co.*, 319 N.C. 627, 629, 356 S.E.2d 357 (1987) (internal quotation marks omitted)). Ms. Shuler attempts to overcome the presumption of at-will employment by alleging that Tower agreed to treat her "according to a set policy and practice." (ECF No. 2, 2.) "Under North Carolina law, an employee handbook or policy manual does not create a legally binding contract between employer and employee unless the terms of the handbook are expressly incorporated into a separate employment contract." *Brewer v. Jefferson-Pilot Standard Life Ins. Co.*, 333 F. Supp. 2d 433, 439 (M.D.N.C. 2004). Ms. Shuler has not pled or proved the existence of any separate employment contract incorporating the terms of Tower's "policy and practice." Accordingly, her breach of contract claim must fail.

*Negligence*

---

[2] Ms. Shuler's defamation claim is based on an email from Mr. Fonseca in which he told Ms. Shuler that Johnson & Johnson had been dissatisfied with her work and had directed her termination. (ECF No. 17, Ex. 1, 35.) Mr. Fonseca asserts in his affidavit, however, that these statements were inaccurate and based on his mistaken assumption that Johnson & Johnson monitored individual contract attorneys' work and made the decision to terminate Ms. Shuler. (ECF No. 17, Ex. 2, ¶ 10.) Even if the statements were accurate, they do not describe communication by Tower regarding Shuler and therefore would not constitute publication.

Finally, Ms. Shuler claims that Tower breached its duty to provide a non-defective computer system, and "failed to maintain [a] healthy work environment." (ECF No. 2, 3-4.) The North Carolina Workers' Compensation Act "provides the exclusive remedy for employees who are injured . . . because of their employers' negligence." *Richmond v. Indalex Inc.*, 308 F. Supp. 2d 648, 659 (M.D.N.C. 2004); *see* N.C. Gen. Stat. Ann. § 97-10.1. The North Carolina Supreme Court has recognized an exception to the exclusivity provisions of the Act and "thereby allowed civil actions against an employer for situations in which the 'employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct.'" *Id.* at 665 (quoting *Woodson v. Rowland*, 329 N.C. 330, 340, 407 S.E.2d 222, 228 (1991)). Ms. Shuler's complaint is completely devoid of any facts suggesting that Tower intended to injure her. Thus, Ms. Shuler's exclusive remedy, if any, would be under the Workers' Compensation Act, and her negligence claims must be dismissed.

A separate Order follows.

June 18, 2013                                                /s/
Date                                                     Catherine C. Blake
                                                         United States District Judge